# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 7, 2026

Lyle W. Cayce
Clerk

No. 25-20230

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

AURELIO QUINTANILLA, JR.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CR-434-1

_____

Before SMITH, WILLETT, and RAMIREZ, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

Aurelio Quintanilla pleaded guilty to transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1), (b)(1). In exchange for the dismissal of two related charges, he waived his right to appeal his conviction and sentence, except for claims of ineffective assistance of counsel. He nevertheless argues that the district court misled him about his appellate rights and miscalculated restitution. The waiver forecloses his challenges to the terms of imprisonment and supervised release. His restitution challenge fares no better: the record shows a completed causation inquiry and, in any event, no plain error. We AFFIRM.

No. 25-20230

I

Aurelio Quintanilla pleaded guilty to transporting child pornography.[1] We need not recount the underlying conduct in detail. Under his written plea agreement, the Government agreed to dismiss charges of sexual exploitation of a minor and possession of child pornography—offenses carrying maximum terms of thirty and twenty years, respectively.[2] In exchange, Quintanilla admitted that he was guilty of transporting child pornography.

Three plea-agreement terms matter here. First, the agreement contains a standard appellate waiver: Quintanilla may not challenge his conviction or sentence, except through an ineffective-assistance claim. The waiver states:

> Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

Second, Quintanilla acknowledged that the offense carried a maximum of 240 months' imprisonment and a lifetime of supervised release—and that "the Court ha[d] the authority to impose any sentence up to and including

---

[1] *See* 18 U.S.C. §§ 2252A(a)(1), (b)(1).

[2] *See id.* §§ 2251(a), (e); *id.* §§ 2252A(a)(5)(B), (b)(2); *see also* Fed. R. Crim. P. 11(c)(1)(A) (providing that a "plea agreement may specify that an attorney for the government will . . . not bring, or will move to dismiss, other charges[.]").

the statutory maximum."[3] Third, he acknowledged that the law required restitution of at least $3,000 to each identifiable victim.[4] The agreement left sentencing to "the sole discretion of the sentencing judge after the Court ha[d] consulted the applicable Sentencing Guidelines."[5] Finally, Quintanilla confirmed that he had "read and carefully reviewed every part of [the] plea agreement," understood it, and "voluntarily agree[d] to its terms."

At the change-of-plea hearing, Quintanilla confirmed the material terms of his bargain. He understood the charge, the factual basis for his plea, and the maximum penalty. He waived his trial rights. The court also explained that, "under some circumstances," Quintanilla or the Government "may have the right to appeal any sentence . . . impose[d]."[6] Quintanilla then testified that he had read and understood the plea agreement. The court accepted his guilty plea as knowing, voluntary, and supported by an adequate factual basis.

Before sentencing, the United States Probation Office (USPO) attributed 3,092 images of child pornography to Quintanilla.[7] After applying

---

[3] *See* 18 U.S.C. § 2252A(b)(1); *id.* § 3583(k).

[4] *See id.* § 2259(b)(2).

[5] *See id.* § 3553(a).

[6] The district court conducted a joint change-of-plea hearing for Quintanilla and an unrelated defendant. In explaining appellate rights, the court advised both defendants at once that, "under some circumstances[,] you or the Government may have the right to appeal any sentence . . . impose[d]." Each defendant separately confirmed that he understood. The court then separately reviewed each defendant's plea agreement. Quintanilla does not argue that this collective advisement failed to satisfy Federal Rule of Criminal Procedure 11(b)(1)(N)'s requirement that the court "address the defendant personally in open court."

[7] According to his presentence report, Quintanilla is accountable for 242 images and 38 videos of child pornography. Under the Federal Sentencing Guidelines, each video counts as 75 images. *See* U.S.S.G. § 2G2.2 n.6. Thus, Quintanilla's 38 videos convert to

several offense-specific enhancements and a three-level reduction for acceptance of responsibility,[8] the PSR calculated a total offense level of 42.

With a total offense level of 42 and a criminal-history category of I, Quintanilla's Guidelines range was 360 months to life. Because the statutory maximum was 240 months,[9] that maximum became the Guidelines sentence.[10] Restitution was mandatory because Quintanilla had been "convicted of trafficking in child pornography."[11] The PSR was supplemented with two victim restitution requests: one for $10,000 and one for $7,500.

At sentencing, Quintanilla requested the sixty-month mandatory minimum, while the Government recommended 216 months. After considering the parties' arguments and the § 3553(a) factors, the district court imposed 240 months' imprisonment and a lifetime term of supervised release.[12] It also considered the victim-impact statements and ordered $17,500 in combined restitution: $10,000 to one victim and $7,500 to the other. Each component of the sentence fell within the ranges Quintanilla acknowledged in his plea agreement.

---

2,850 images. He was therefore held responsible for a total 3,092 images depicting child pornography.

[8] *See generally id.* § 2G2.2(b)(1)–(7) (providing sentencing enhancements for child pornography offenses), § 3E1.1(a), (b) (providing acceptance-of-responsibility reduction).

[9] *See* 18 U.S.C. § 2252A(b)(1).

[10] *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

[11] 18 U.S.C. § 2259(b)(2).

[12] *See* 18 U.S.C. § 3553(a); *id.* § 2252A(b)(1); *id.* § 3583(k).

No. 25-20230

On appeal, Quintanilla argues that the district court: (1) affirmatively misled him about his appellate rights; (2) imposed a substantively unreasonable prison term; (3) procedurally erred by disregarding mitigation, treating the Guidelines as binding, and inadequately explaining the sentence; (4) imposed an unreasonable lifetime term of supervised release; and (5) failed to conduct the causation and apportionment analysis required for restitution. He seeks vacatur and resentencing.

## II

Each claim fails. The Rule 11 colloquy did not undo Quintanilla's knowing and voluntary waiver of most of his appellate rights. The waiver therefore bars his challenges to imprisonment and supervised release. His restitution challenge also fails: the sentencing record reflects a completed causation inquiry and, in any event, no plain error. We AFFIRM the district court's judgment.

## A

Quintanilla first argues that the district court affirmatively misled him about his appellate rights. He says the court contradicted the written waiver when it advised him that, "under some circumstances," he "may have the right to appeal any sentence." That generic advisement did not misstate the law or expand the appeal rights Quintanilla had waived.

We review *de novo* whether an appellate waiver is enforceable.[13] Because Quintanilla did not object during his change-of-plea colloquy, we review the colloquy itself for plain error.[14] He must show a "clear or obvious" error affecting "substantial rights"—and even then, relief is discretionary

---

[13] *United States v. Jacobs*, 635 F.3d 778, 780–81 (5th Cir. 2011) (citation omitted).

[14] *United States v. Oliver*, 630 F.3d 397, 411 (5th Cir. 2011) (citations omitted).

5

and reserved for an error that "seriously affects the fairness, integrity or public reputation of judicial proceedings."[15] To obtain relief, Quintanilla "must show a reasonable probability that, but for the error, he would not have entered the plea."[16]

Quintanilla's appellate waiver is enforceable. "The right to appeal a conviction and sentence is a statutory right, not a constitutional one, and a defendant may waive it as part of a plea agreement."[17] The waiver is valid when it is knowing and voluntary, and, by its plain terms, applies to the circumstances at hand.[18] Quintanilla has not shown that his waiver was uninformed and involuntary.[19]

The written agreement squarely resolves the question. Quintanilla "knowingly and voluntarily waive[d] the right to appeal or 'collaterally attack' the conviction and sentence," preserving only "a claim of ineffective assistance of counsel." He further represented that he had "read and carefully reviewed every part of the plea agreement," understood its meaning, and "voluntarily agree[d] to its terms." Those representations establish a knowing and voluntary waiver.

The plea colloquy confirms that conclusion. The court's statement that appellate rights might exist "under *some* circumstances," was not, as Quintanilla suggests, a "categorical assurance of appellate rights." It

---

[15] *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (alterations and citations omitted).

[16] *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

[17] *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002) (citation omitted).

[18] *See United States v. Rodriguez-Estrada*, 741 F.3d 648, 650 (5th Cir. 2014) (citation omitted).

[19] *See United States v. Cuevas-Andrade*, 232 F.3d 440, 446 (5th Cir. 2000).

accurately recognized that the plea agreement left some appellate avenues open—including an ineffective-assistance claim—and that other rights might arise in circumstances the waiver did not reach. Nothing in the statement suggested that Quintanilla could appeal every aspect of his conviction or sentence despite his written waiver.

The record contains no sign of confusion. Quintanilla confirmed that he had read and understood the agreement. He and counsel had an opportunity to raise questions before the court accepted the plea, and the court found him competent to enter it. The written agreement and the colloquy tell us the same story: Quintanilla understood the bargain he made.

The district court therefore did not err—much less plainly. Quintanilla accepted responsibility for one offense in exchange for dismissal of two others. He may not now disclaim the waiver that was central to that bargain.

## B

Because the waiver is valid and encompasses challenges to Quintanilla's "conviction and sentence," it bars his claims attacking the prison term and lifetime of supervised release. We do not reach the merits of those challenges.[20]

---

[20] *See, e.g.*, *United States v. Tata*, No. 22-50383, 2023 WL 3818381, at *1 (5th Cir. June 5, 2023) (per curiam) (unpublished) ("Tata's challenges to the reasonableness of his sentence are barred by the valid appeal waiver." (citing *United States v. Bond*, 414 F.3d 542, 544, 546 (5th Cir. 2005))); *United States v. Lozano*, 757 F. App'x 348, 351 (5th Cir. 2018) (per curiam) ("Because Lozano waived his right to collaterally attack his sentence, any challenge to the terms of supervised release is barred by a valid appeal waiver." (citing *United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017))).

No. 25-20230

C

Quintanilla separately challenges the restitution award. He argues that the district court failed to conduct the proximate-cause and apportionment inquiry required by *Paroline v. United States*.[21] The record does not bear that out.

An appellate waiver ordinarily forecloses a restitution challenge because restitution is part of the defendant's sentence.[22] Quintanilla concedes that general point,[23] but he raises an exception. Relying on *Paroline v. United States*, he argues that the court's restitution order exceeds the

_____

[21] 572 U.S. 434, 448 (2014) (holding that restitution is proper "only to the extent the defendant's offense proximately caused a victim's losses").

[22] *See United States v. Alfred*, 60 F.4th 979, 981–82 (5th Cir. 2023).

[23] Quintanilla concedes that restitution is part of, rather than distinct from, a defendant's sentence. *See* 18 U.S.C. § 3663A(a)(1) ("[W]hen sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense . . ."); *id.* § 3664(o) ("A sentence that imposes an order of restitution is a final judgment. . . ."). Other courts have so held. *See*, *e.g.*, *United States v. Faella*, 819 F. App'x 844, 848 (11th Cir. 2020) (per curiam) ("Restitution is part of a sentence and a challenge to a restitution amount can be waived by a valid appeal waiver." (citing *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008))); *United States v. Hankins*, 858 F.3d 1273, 1276 (9th Cir. 2017) ("This restitution order is part of a convicted defendant's criminal sentence."); *United States v. Feast*, 614 F. App'x 195, 195 (5th Cir. 2015) (per curiam) ("As part of her sentence, the district court imposed restitution . . . ."); *United States v. Winans*, 748 F.3d 268, 271 (6th Cir. 2014) ("Because restitution is a part of Winans's sentence, and Winans waived 'any right he may have to appeal his sentence,' the waiver extinguished Winans's right to appeal the restitution order."); *United States v. Monzel*, 641 F.3d 528, 541 (D.C. Cir. 2011) ("Amy is asking the court to revisit her restitution award, which *is* part of Monzel's sentence." (footnote omitted)); *United States v. Cohen*, 459 F.3d 490, 496 (4th Cir. 2006) ("[R]estitution is . . . part of the criminal defendant's sentence."); *United States v. Simon*, No. 04-cr-43, 2005 WL 3541133, at *3 (E.D. La. Oct. 3, 2005); *United States v. Acosta*, 303 F.3d 78, 87 (1st Cir. 2002) ("It is undisputed that restitution is part of a sentence."); *United States v. Syme*, 276 F.3d 131, 159 (3d Cir. 2002) ("Restitution orders have long been treated as part of the sentence for the offense of conviction . . . .").

statutory maximum sentence.[24] As we have held in applying *Paroline*, "if a court orders a defendant to pay restitution under § 2259 without determining that the defendant's conduct proximately caused the victim's claimed losses, the amount of restitution necessarily exceeds the statutory maximum."[25] And "[c]laims that a sentence exceeds the statutory maximum are not barred by a waiver of appeal."[26] The crucial distinction, however, is between a court that fails to conduct the required inquiry and a defendant who merely disputes the result of an inquiry the court actually conducted.

Quintanilla did not object to the restitution below, so any unwaived merits challenges are reviewed for plain error.[27] As outlined above, that standard requires a clear or obvious error affecting an "appellant's substantial rights" and "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings."[28] If those conditions are met, then the court of appeals may—at its discretion—remedy the error.[29] We have previously recognized that a court's "failure to conduct a *Paroline* proximate-cause analysis" reflects "clear and obvious error[] not subject to reasonable dispute."[30] Binding precedent also indicates that "a restitution order . . . in an amount greater than the loss caused" affects an appellant's substantial

---

[24] 572 U.S. 434 (2014).

[25] *United States v. Winchel*, 896 F.3d 387, 389 (5th Cir. 2018) (collecting cases).

[26] *United States v. Swarner*, 168 F.4th 309, 311 (5th Cir. 2026) (citation omitted).

[27] *See United States v. West*, 137 F.4th 395, 401 (5th Cir. 2025) (citations omitted); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

[28] *See Winchel*, 896 F.3d at 389 (quotation omitted).

[29] *See id.*

[30] *See West*, 137 F.4th at 402.

No. 25-20230

rights, as well as the fairness, integrity, or public reputation of judicial proceedings.[31] But the district court conducted the required inquiry here.

*Paroline* recognizes that tracing a particular offender's role in a victim's losses is difficult.[32] It therefore gives district courts "discretion in fashioning a restitution order,"[33] directing them to "assess as best [they] can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses."[34] The inquiry has "rough guideposts"—not a "precise algorithm"—including:

- "The number of past criminal defendants found to have contributed to the victim's general losses";

- "Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses";

- "Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)";

- "Whether the defendant reproduced or distributed images of the victim";

- "Whether the defendant had any connection to the initial production of the images";

---

[31] *See id.* (citations omitted); *see also Rosales-Mireles v. United States*, 585 U.S. 129, 141 (2018) ("[T]he public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" (quotation omitted)).

[32] *See Paroline*, 572 U.S. at 449.

[33] *See id.* at 459 (quoting 18 U.S.C. § 3664(a)).

[34] *Id.*

No. 25-20230

- "How many images of the victim the defendant possessed";
- "And other facts relevant to the defendant's relative causal role."[35]

The sentencing record satisfies that flexible inquiry. The district court specifically considered each victim's restitution report. Those reports estimated losses of $3,610,878.88 for one victim, and $1,980,793.67 for the other. The court ordered $10,000 and $7,500, respectively—amounts that, in each case, represent about 0.3% of each victim's reported losses.

The court also considered that Quintanilla did not simply view pornography involving the victims: he *downloaded* the pornographic videos and images. Then, the court read aloud portions of one victim's impact statement that described the lifelong injuries Quintanilla inflicted. After considering the PSR, restitution reports, and victim-impact statements, the court imposed a modest $17,500 award. The court was not required to recite every *Paroline* guidepost or supply a mathematically exact apportionment. This is a disagreement with the outcome of a completed causation inquiry, not a claim that the court conducted none. The waiver therefore bars Quintanilla's restitution challenge; in any event, the record reveals no error, much less plain error.[36]

---

[35] *See id.* at 459–60 (capitalization altered).

[36] *See West*, 137 F.4th at 401. Even if Quintanilla *had* shown that the sentencing court plainly erred in calculating restitution, we would decline to exercise our discretion to reverse his conviction or sentence because the alleged error does not "*seriously* affect the fairness, integrity or public reputation of judicial proceedings." *See Winchel*, 896 F.3d at 389 (citation modified).

No. 25-20230

\*    \*    \*

We AFFIRM.